UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**CHRISTOPHER VITALE,**

Plaintiff,

-against-

**SSP AMERICA, INC., and UNITE HERE LOCAL 100,**

Defendants.

Civil Action No.
1:26-cv-5373

**COMPLAINT**

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff CHRISTOPHER VITALE ("Plaintiff" or "Mr. Vitale"), by and through his attorneys, Acampora & Levine, Attorneys at Law, P.C., as and for his Complaint against Defendants SSP America, Inc. ("SSP" or the "Company"), and UNITE HERE Local 100 (the "Union"), alleges as follows:

## NATURE OF THE ACTION

1. This is a hybrid action brought under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, arising out of the wrongful termination of Plaintiff's employment by SSP in breach of the governing collective bargaining agreement, and the Union's breach of its duty of fair representation—the fiduciary-in-nature duty it owes to Plaintiff as a bargaining-unit member—in its handling, investigation, and processing of Plaintiff's grievance.

2. As set forth below, SSP terminated Plaintiff without just cause and in violation of the collective bargaining agreement, mischaracterizing his separation as "job abandonment" notwithstanding that Plaintiff gave management repeated written notice of the specific date on which he would return to work, and in fact reported for duty on that date.

3. The Union, in turn, breached the duty it owes to Plaintiff by failing to meaningfully communicate with him, failing to conduct an adequate investigation, failing to follow the grievance procedures set forth in the collective bargaining agreement, refusing to provide Plaintiff and his counsel a copy of the collective bargaining agreement despite repeated requests, and refusing to permit Plaintiff's attorney to be present at the grievance meeting.

4. Plaintiff further alleges that SSP and the Union acted in concert and in collusion with one another, working together to the detriment of Plaintiff and to defeat his legitimate grievance, such that the Union's conduct was arbitrary, discriminatory, and in bad faith.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, as this action arises under the laws of the United States and concerns a collective bargaining agreement between an employer and a labor organization representing employees in an industry affecting commerce.

6. This Court has supplemental jurisdiction over any related state-law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and, as to Defendant UNITE HERE Local 100, 29 U.S.C. § 185(c), because a substantial part of the events or omissions giving rise to the claims occurred in this District, at John F. Kennedy International Airport, Terminal 5, in Queens County, New York, and because the Defendants transact business and are found within this District. Defendant UNITE HERE Local 100 maintains an office at 135-27 Lefferts Boulevard, South Ozone Park, Queens County, New York 11420, and its duly authorized officers and agents are engaged in representing and acting for bargaining-unit members employed at John F. Kennedy International Airport within this District.

8. This action is timely. A hybrid claim under Section 301 of the Labor Management Relations Act and for breach of the duty of fair representation is governed by the six-month limitations period borrowed from Section 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). Plaintiff was discharged on April 22, 2026, and his claims accrued no earlier than July 2, 2026, the date on which SSP issued its written determination upholding the separation and on which Plaintiff knew or reasonably should have known that the Union would take no further action on his grievance. This action is commenced within six months of either date.

## THE PARTIES

9. Plaintiff Christopher Vitale is an individual residing in the State of New York and, at all relevant times, was employed by SSP at JFK Terminal 5 and was a member of the bargaining unit represented by the Union.

10. Upon information and belief, Defendant SSP America, Inc., is a California corporation authorized to do business in the State of New York, operating food and beverage concessions at John F. Kennedy International Airport, Terminal 5, and was at all relevant times Plaintiff's employer within the meaning of 29 U.S.C. § 152(2).

11. Upon information and belief, Defendant UNITE HERE Local 100 is a labor organization within the meaning of 29 U.S.C. § 152(5) and, at all relevant times, was the exclusive collective bargaining representative of the bargaining unit that included Plaintiff, and owed Plaintiff a duty of fair representation. Local 100 is an unincorporated labor organization that maintains offices at 275 Seventh Avenue, 16th Floor, New York, New York 10001 and at 135-27 Lefferts Boulevard, South Ozone Park, New York 11420, and may sue and be sued as an entity pursuant to 29 U.S.C. § 185(b).

12. At all relevant times, the terms and conditions of Plaintiff's employment were governed by a collective bargaining agreement (the "CBA") between SSP and the Union, which, upon information and belief, permits termination of bargaining-unit employees only for just cause and establishes a grievance and arbitration procedure.

## FACTUAL ALLEGATIONS

13. Plaintiff was employed by SSP at JFK Terminal 5 and, throughout his employment, was an exemplary employee with a strong work history and record of professionalism. He never received any write-ups, disciplinary actions, warnings, or performance-related complaints during his employment.

14. Plaintiff had an approved vacation scheduled from April 8, 2026 through April 16, 2026. Prior to departing, Plaintiff informed his manager, Kristine, whose full name is presently unknown to Plaintiff and is known to SSP, that he might need to extend his trip and return to work on April 22, 2026. Kristine verbally instructed Plaintiff to provide her with a few days' notice in advance should he decide to extend his trip.

15. Consistent with that verbal instruction, Plaintiff provided Kristine with advance notice on April 13, 2026 — approximately three days before the end of his approved vacation, as SSP's own grievance recap acknowledges — that he would be extending his trip and returning to work on April 22, 2026. This exchange is memorialized in a series of contemporaneous text messages between Plaintiff and Kristine, in which Plaintiff repeatedly and unequivocally advised, "I'll be back to work the 22nd," "See you when I get back," and confirmed his return date as "Wednesday 22."

16. Kristine herself confirmed, in writing, her understanding of Plaintiff's return date. On April 16, 2026, Kristine texted Plaintiff, "So you really aren't planning on coming back. To the 22'nd?" Plaintiff confirmed that he was returning on the 22nd. Kristine responded only, "Will have to speak because it's going to be an issue," to which Plaintiff replied, "That's fine." At no point did Kristine advise Plaintiff that his employment was in jeopardy, that he would be deemed to have abandoned his position, or that termination would result if he returned on April 22, 2026 as stated.

17. Earlier in the same exchange, on April 13, 2026, Kristine responded to Plaintiff's stated return date with messages including "No" and "No not approving." Plaintiff does not dispute that those messages were sent. Their significance is that, taken together with Kristine's own written acknowledgment three days later of Plaintiff's intended return on the 22nd, management possessed clear, written, advance notice that Plaintiff intended to and would return to work on April 22, 2026. Whatever dispute existed as to the authorization of Plaintiff's additional days away, the exchange does not evidence an abandonment of employment.

18. Plaintiff reported to work at his scheduled shift on April 22, 2026 — the very date he had told Kristine he would return, and the date Kristine had acknowledged in writing. Upon arrival, Plaintiff was abruptly instructed to surrender his badge and informed that his employment had been terminated.

19. Upon information and belief, the decision to terminate Plaintiff was not made by Kristine. At the time she carried out the termination, Kristine stated to Plaintiff that the decision had been made by a higher-level manager known to Plaintiff as Bibi, whose full name is presently unknown to Plaintiff and is known to SSP. Upon information and belief, Bibi had no communications with Plaintiff concerning his vacation or his return

date, was not a participant in the text messages described above, and did not review those messages before determining that Plaintiff had abandoned his employment.

20. On the same day of his termination, April 22, 2026, Kristine provided Plaintiff with the contact information for the Union — specifically, Union Organizer Eduardo Lopez, including his telephone number, cell number, member help desk number, and email address — thereby directing Plaintiff to the very Union that would thereafter fail to represent him.

21. SSP subsequently characterized Plaintiff's separation as "Job Abandonment," asserting that Plaintiff had received written notice denying his request to extend his vacation and directing him to return to work, and that he had failed to report for his scheduled shifts.

22. SSP's stated basis for the termination does not withstand examination. "Job abandonment" denotes a separation in which the employee has evinced an intention not to return to work. Plaintiff advised management in writing, repeatedly and specifically, that he would return on April 22, 2026; management acknowledged that date in writing; and Plaintiff did in fact report for his scheduled shift on April 22, 2026, only to be terminated upon arrival. Whatever else the separation may have been, it was not an abandonment of employment, and SSP's classification of it as such was contrary to the CBA.

23. Plaintiff's termination was arbitrary, without just cause, and inconsistent with the principles of progressive discipline and the just-cause protections of the CBA.

24. At no time during his employment did SSP issue Plaintiff any warning, counseling, written notice, or discipline advising him that his continued absence would place his employment in jeopardy or would be treated as job abandonment. The immediate discharge of an employee with an unblemished record, arising from a single scheduling dispute and without prior warning of any kind, is inconsistent with the principles of progressive discipline and with the just-cause standard imposed by the CBA.

25. Following his termination, Plaintiff diligently and repeatedly sought Union assistance and representation, beginning on April 22, 2026 — the very day of his discharge, on which he placed two telephone calls to the Union's JFK office. Between April 22, 2026 and May 14, 2026, Plaintiff placed no fewer than fifteen telephone calls to Union Organizer Eduardo Lopez and to the Union's JFK office, including calls on April 22,

April 27, May 1, May 4, May 5, May 7, May 12, May 13, and May 14, 2026. Plaintiff reached Union personnel on more than one occasion. Notwithstanding that contact, the Union took no substantive action on Plaintiff's behalf for approximately eight weeks.

26. By letter dated May 22, 2026, Plaintiff's counsel prepared a written Request for Immediate Union Representation and Grievance for Wrongful Termination, which was transmitted by electronic mail to Union representative Eduardo Lopez on May 23, 2026 and was followed by further emails addressed to him dated May 27, 2026 and June 4, 2026. The same letter was transmitted to Mr. Lopez a second time, as an attachment sent directly to his cellular telephone, on June 4, 2026. The Union failed to substantively respond to any of these communications.

27. SSP likewise received direct notice and did not respond. On May 4, 2026, Plaintiff sent an electronic mail message to SSP's human resources representative, Ursula Holden, identifying himself, his place of employment, and his wrongful termination, and providing his telephone number. Plaintiff received no response. Ms. Holden was also a recipient of counsel's May 23, 2026 correspondence and of counsel's subsequent follow-up communications. SSP did not respond to Plaintiff or to his counsel at any time prior to the grievance meeting.

28. On June 4, 2026, Mr. Lopez initiated a text-message exchange with Plaintiff's counsel. When counsel asked whether he had reviewed her letter, Mr. Lopez responded, "Which letter?", "Your name", "??", and "What's your name and where you work please maybe you have I have to check." At that time Mr. Lopez had been in possession of counsel's letter at his Union electronic mail address for thirteen days and had received two follow-up messages. Counsel thereupon transmitted the letter to him again and asked him to confirm whether a grievance had been filed on Plaintiff's behalf and what action had been taken to challenge the termination. Mr. Lopez did not answer.

29. Upon information and belief, no grievance concerning Plaintiff's termination was filed with SSP until on or about June 17, 2026 — approximately eight weeks after Plaintiff's discharge, and only after Plaintiff's counsel escalated the matter above Mr. Lopez to Dennis Diaz, the Union's Organizing Director. On the evening of June 17, 2026, Mr. Diaz advised counsel in writing that a grievance had been filed, that the Union would "investigate and meet with the company," and that it would communicate with the

grievant going forward. The grievance was designated Grievance No. 538110, "Termination W/O Just Cause." The grievance meeting was held on June 25, 2026.

30. Plaintiff and his counsel repeatedly requested a complete copy of the applicable CBA, including all provisions governing grievance procedures and representation rights. The Union ignored and refused these requests and, to date, has failed to produce the CBA. In addition, on June 17, 2026 Plaintiff asked Mr. Lopez directly, by text message, "Can you show me in the contract where it says I can't have an attorney present?" Mr. Lopez did not answer the question and instead redirected the exchange to scheduling.

31. When Plaintiff's counsel advised the Union that she intended to attend the grievance meeting on Plaintiff's behalf, the Union, through Dennis Diaz, the Union's Organizing Director, flatly refused, responding: "Attorneys are not allowed in our grievance meetings," and repeatedly asserting that the Union's "obligation is with the member" and that it would "deal with the member" directly, thereby excluding Plaintiff's chosen counsel from the process. Union Organizer Eduardo Lopez took the same position, advising Plaintiff by text message, "I don't deal with lawyers." Although Plaintiff's counsel requested on four separate occasions across June 17 and June 18, 2026 that the Union identify the specific provision of the CBA or other authority prohibiting the attendance of counsel, the Union never identified any such provision, and on June 18, 2026 Mr. Diaz terminated the correspondence, writing: "We disagree and this will be the last response out of courtesy."

32. The Union's exclusion of counsel was not limited to correspondence. On June 25, 2026, Plaintiff's counsel, Annalisa Acampora, Esq., appeared in person at the grievance meeting to represent Plaintiff. Plaintiff's counsel was physically blocked from entering the meeting and was denied entry, such that Plaintiff was forced to proceed without the assistance of his chosen legal counsel. This deliberate, in-person exclusion of Plaintiff's attorney deprived Plaintiff of representation at the single most consequential stage of the grievance process.

33. The Union's notice of the grievance meeting was informal, last-minute, and coercive. On June 17, 2026, Plaintiff's counsel advised the Union in writing that Plaintiff would not attend any grievance meeting without legal representation present. On June 18, 2026, within a period of approximately five minutes, Plaintiff received three separate text messages stating that if he did not appear at the meeting his grievance would be

considered closed — two from Mr. Lopez and one from an additional telephone number. Notice was communicated by text message directly to Plaintiff rather than through his counsel of record. Faced with the threatened forfeiture of his grievance, Plaintiff appeared on June 25, 2026 without counsel.

34. The Union scheduled the grievance meeting to be held at JFK Airport, Terminal 4, at 10:00 a.m. on a Thursday. Plaintiff had been employed at Terminal 5, not Terminal 4. As the Union and SSP both knew, Plaintiff's employment had been terminated and his airport security badge had been confiscated at the time of his termination, such that requiring Plaintiff to appear in person inside a secure airport terminal — where he no longer held credentialed access — imposed practical obstacles to his attendance and participation, obstacles that a competent representative acting in good faith would have anticipated and accommodated. The Union was expressly informed of this obstacle. When Mr. Lopez directed Plaintiff to bring his Port Authority credential to the meeting, Plaintiff advised him that SSP had taken the badge on the day of his termination. Mr. Lopez responded, "I'm not Ssp," and "Ok they said you had it," and scheduled the meeting inside Terminal 4 notwithstanding.

35. The Union failed to conduct any adequate or good-faith investigation into Plaintiff's grievance, failed to gather and present readily available evidence—including management's own communications approving the extension of Plaintiff's vacation—and failed to follow the grievance procedures established by the CBA.

36. At the June 25, 2026 grievance meeting, the Union requested only that SSP change Plaintiff's separation status from "Job Abandonment" to "Voluntary Resignation." That request did not seek to set aside the discharge or otherwise vindicate Plaintiff's rights under the CBA, and it sought relief that Plaintiff did not want and had not authorized. Within approximately one hour of the meeting's conclusion, Plaintiff's counsel advised the Union and SSP in writing that the proposed reclassification was rejected, and Plaintiff separately confirmed in writing that he did not wish his termination changed to a resignation. By written response dated July 2, 2026, SSP upheld the separation as Job Abandonment.

37. SSP's written grievance recap is itself unreliable and demonstrably inaccurate. The recap states that the grievance meeting was "held on Thursday May 25th, 2026." May 25, 2026 was a Monday, not a Thursday, and was Memorial Day. The meeting was in

fact held on Thursday, June 25, 2026, as the Union's own contemporaneous text messages confirm: the Union was still coordinating the meeting date on June 17 and June 18, 2026, and on each occasion identified the meeting as occurring the following Thursday. That the document upon which SSP relies to justify its determination misstates by a full month the date of the proceeding it purports to memorialize reflects the careless and results-oriented manner in which Plaintiff's grievance was processed and decided.

38. The Union's handling of the grievance was perfunctory, arbitrary, discriminatory, and in bad faith. The Union failed to communicate with Plaintiff, failed to investigate, failed to advance the meritorious grounds supporting his grievance, and failed to pursue the grievance and arbitration procedures available under the CBA.

39. Upon information and belief, SSP and the Union acted in concert and colluded with one another to the detriment of Plaintiff, coordinating their positions and conduct so as to defeat Plaintiff's grievance and insulate the wrongful termination from meaningful challenge.

40. As a direct and proximate result of the conduct of SSP and the Union, Plaintiff has suffered and continues to suffer damages, including lost wages and benefits during the period of his unemployment, diminished earnings, and other damages to be proven at trial. Plaintiff has since mitigated his damages by obtaining other employment. Plaintiff does not seek reinstatement, as he is unwilling to return to the work environment maintained by SSP, and instead seeks monetary relief to make him whole, with damages apportioned as between SSP and the Union in accordance with governing law.

41. Any requirement that Plaintiff exhaust the grievance and arbitration machinery of the CBA is excused. The Union controls access to arbitration under the CBA, Plaintiff has no independent right to compel arbitration, and the Union breached its duty of fair representation in the manner described above and declined to advance Plaintiff's grievance further. To the extent the Union maintains internal appeal procedures, those procedures were never disclosed to Plaintiff notwithstanding his repeated requests for a copy of the CBA, could not have afforded him the relief he seeks, and resort to them would have been futile.

**FIRST CAUSE OF ACTION**

**(Breach of Collective Bargaining Agreement Against SSP — 29 U.S.C. § 185)**

42. Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

43. The CBA between SSP and the Union permitted termination of bargaining-unit employees, including Plaintiff, only for just cause.

44. Plaintiff pleads the terms of the CBA upon information and belief because, despite repeated written demands by Plaintiff and his counsel, neither the Union nor SSP has produced a copy of the CBA to Plaintiff. Plaintiff reserves the right to amend this pleading to identify the specific provisions of the CBA breached upon production of the agreement.

45. SSP breached the CBA by terminating Plaintiff's employment without just cause and by mischaracterizing his separation as "job abandonment" in violation of the terms of the CBA and the principles of progressive discipline.

46. As a direct and proximate result of SSP's breach of the CBA, Plaintiff has suffered damages, including lost wages and benefits, in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**

**(Breach of the Duty of Fair Representation Against UNITE HERE Local 100)**

47. Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

48. As the exclusive collective bargaining representative of the bargaining unit that included Plaintiff, the Union owed Plaintiff a duty of fair representation—a fiduciary-in-nature duty—to represent him fairly, in good faith, and without arbitrary, discriminatory, or bad-faith conduct.

49. The Union breached that duty by, among other things: (a) failing to meaningfully communicate with Plaintiff and his counsel; (b) failing to properly and adequately investigate Plaintiff's grievance; (c) failing to follow the grievance procedures established by the CBA; (d) refusing to provide Plaintiff and his counsel a copy of the CBA despite repeated requests; (e) refusing to permit Plaintiff's attorney to be present at the grievance meeting; (f) failing to advance the meritorious grounds supporting

Plaintiff's grievance; and (g) handling the grievance in a perfunctory, arbitrary, discriminatory, and bad-faith manner. Plaintiff does not contend that the CBA or applicable law conferred an absolute right to the presence of retained counsel at the grievance meeting; the conduct described in subparagraphs (d) and (e) is pleaded as evidence of the arbitrary, perfunctory, and bad-faith character of the Union's handling of the grievance as a whole.

50. The Union's conduct was arbitrary, discriminatory, and in bad faith, and constituted a breach of the duty of fair representation.

51. Upon information and belief, SSP and the Union acted in concert and colluded with one another, coordinating their conduct and positions with the shared objective of defeating Plaintiff's grievance and insulating his wrongful termination from meaningful challenge.

52. This concerted conduct rendered the grievance process a sham, tainted the Union's handling of the grievance, and independently establishes that the Union's conduct was in bad faith and that SSP's breach of the CBA cannot be insulated by the grievance machinery.

53. As a direct and proximate result of the Union's breach, Plaintiff was deprived of a fair opportunity to challenge his wrongful termination and has suffered damages, including lost wages and benefits, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Christopher Vitale respectfully requests that this Court enter judgment in his favor and against Defendants as follows:

(a) On the First Cause of Action, awarding compensatory damages against SSP, including back pay, lost benefits, and diminished earnings, in an amount to be determined at trial;

(b) On the Second Cause of Action, awarding compensatory damages against UNITE HERE Local 100 for its breach of the duty of fair representation, in an amount to be determined at trial;

(c) Awarding such further monetary and make-whole relief, other than reinstatement, as will fully compensate Plaintiff for his losses, Plaintiff having elected not to seek reinstatement;

(d) Awarding pre-judgment and post-judgment interest as permitted by law;

(e) Awarding Plaintiff his costs, disbursements, and reasonable attorneys' fees to the extent permitted by law; and

(f) Granting such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: Merrick, New York
August 27, 2026

Respectfully submitted,

**ACAMPORA & LEVINE ATTORNEYS AT LAW, P.C.**

By: Annalisa Acampora

Annalisa Acampora, Esq.
Attorneys for Plaintiff Christopher Vitale
1615 Merrick Road
Merrick, New York 11566
Tel: (516) 407-3400 | Fax: (516) 407-3399
Email: annalisa@aclevlaw.com

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **CHRISTOPHER VITALE,**<br>Plaintiff,<br>-against-<br>**SSP AMERICA, INC., and UNITE HERE LOCAL 100,**<br>Defendants. | Civil Action No. 1:26-cv-5373<br>**VERIFICATION** |

**VERIFICATION**

CHRISTOPHER VITALE declares, pursuant to 28 U.S.C. § 1746, as follows:

1. I am the Plaintiff in the above-captioned action.

2. I have read the foregoing Complaint and know the contents thereof.

3. The allegations set forth in the Complaint are true to my own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

4. The basis of my knowledge as to those matters alleged upon information and belief consists of documents, records and communications in my possession, information provided to me by others, and the investigation conducted by my counsel.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 27, 2026.

CHRISTOPHER VITALE